Filed 1/13/16  Paul B. v. Superior Court CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL B., | F072561 |
| Petitioner, | (Super. Ct. No. JJV068060C) |
| v. | |
| THE SUPERIOR COURT OF TULARE COUNTY, | **OPINION** |
| Respondent; | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Real Party in Interest. | |

### <u>THE COURT</u>[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Michael B. Sheltzer, Judge.

Paul B., in pro. per., for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Kane, J. and Smith, J.

Paul B. (father) in propria persona seeks extraordinary writ relief from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] terminating his reunification services and setting a section 366.26 hearing as to his 11-year-old son, Paul W. Father contends, in essence, that he was deprived effective assistance of counsel, and that the Tulare County Human Services Agency deprived him the right to visit his children and failed to provide him copies of its reports prior to the hearings. As a result, he argues, he was unable to defend himself. We deny the petition.

### PROCEDURAL AND FACTUAL SUMMARY

In July 2014, then 10-year-old Paul was taken into protective custody along with his stepsisters, 14-year-old E.W. and 12-year-old K.W., by the Tulare County Human Services Agency (agency) after Christy, the children's mother, struck E.W. in the face. E.W. sustained bruising on the left side of her face and a swollen upper lip.

E.W. told a police officer that she, K.W., and two friends entered her family home around 8:30 p.m. Father was intoxicated and yelled at her and her friends, calling them "Sluts and [Bitches]." He told her friends to leave and told E.W. she was a mistake and she was not wanted. E.W. went to her room, crying. Christy entered E.W.'s room and struck her on the right side of the face for crying. Christy also told E.W. she would slit her throat from "ear to ear" if she did not stop crying. E.W. went to a friend's house and contacted the police.

E.W. also told the officer that father "touch[ed] her," explaining that he digitally penetrated her beginning when she was 12 years old. He also touched her breasts and tried to put his hand down her pants. Father and Christy denied that he sexually abused E.W.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specfied.

Father and Christy were arrested and incarcerated but released three days later. At the time of their release, there were no charges pending. Meanwhile, the agency placed the children together in foster care.

During the course of the agency's investigation, all three children reported having been hit by father and Christy with open and closed hands and with a belt. In addition, they all independently reported seeing father and Christy "'beat'" their siblings and father hit Christy when he was "'drunk.'"

The juvenile court exercised its dependency jurisdiction over the children pursuant to a petition filed by the agency and ordered reunification services for father and Christy. Their reunification plan required them to participate in mental health and substance abuse services and complete a parenting program. The juvenile court ordered the agency to arrange two-hour supervised visits for father and Paul to occur twice weekly.

The juvenile court provided father and Christy 12 months of reunification services. During that time, Christy reported that she believed E.W.'s allegations of sexual abuse against father, and she and father terminated their relationship. By the time of the 12-month review hearing, which was scheduled for September 2015, father was in full compliance with his services plan. However, Christy was not.

In its report for the 12-month review hearing, the agency recommended the juvenile court terminate reunification services for father and Christy and set a section 366.26 hearing. Though father was in compliance, Paul was worried that father would hit him and was afraid to return to his custody. Paul wanted to be adopted by his foster parents.

In October 2015, the juvenile court conducted a contested 12-month review hearing at father's request, and he testified. The court found there was not a substantial probability Paul could be returned to father's custody if it continued father's reunification services. Consequently, the court terminated father's and Christy's reunification services and set a section 366.26 hearing.

3

This petition ensued.[2]

## PROCEDURAL AND FACTUAL SUMMARY

As a preliminary matter, we address the issues father raises that involve the agency. First, he contends that the agency deprived him the ability to visit his children. Since Paul is the subject of this petition, we address visitation as to him only. According to the agency's report for the 12-month review hearing, there were 44 possible visits under the court order for that reporting period and that father attended 41 of those. Consequently, the record does not support his claim that he was not provided visits.

Similarly, father fails to support his claim that the agency failed to provide him copies of its reports. Though the record does not expressly state that father was provided copies, the statute requires the agency to do so. (§ 366.21, subd. (c) [regarding status review hearings, "the social worker shall file a supplemental report with the court" and "provide the parent … with a copy of the report"].) We can presume therefore that the agency fulfilled its duty under the statute unless there is evidence to the contrary. (Evid. Code, § 664.)

More importantly, whether or not father received a personal copy of the final report, we know from the record that he was aware of its contents. During father's testimony, his attorney asked him if he (the attorney) had "gone over [the report]" with him to which father responded, "Yes." Thus, father's claims of error as they relate to the agency are meritless.

We similarly find no merit to father's contention his attorney was ineffective. In order to establish ineffective assistance of counsel, father would have to show that his attorney's handling of his case resulted in prejudicial error, i.e. absent his attorney's errors, there is a reasonable probability of a more favorable outcome. (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)

---

[2]     Christy did not file a writ petition.

4

Here, father does not specify how his attorney mishandled his case. Nor does he show how he might have received a more favorable outcome at the 12-month review hearing. If at that hearing the juvenile court cannot return the child to parental custody, the court has no choice but to terminate reunification services unless there is a substantial probability the child can be returned after an additional period of services or the parent was not provided reasonable reunification services. (§ 366.21, subd. (g).) In this case, father never asserted that he was not provided reasonable services. His attorney did, however, argue there was a substantial probability of return but was unable to persuade the juvenile court, not because he was ineffective but because the evidence did not support such a finding. Indeed, Paul was afraid of father and did not want to return to his custody. There was no reason to believe that further services would have changed Paul's mind.

We find no error on this record and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final as to this court.